**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOSEPH J. PLATT, *et al*.,

Plaintiffs

-vs-

BOARD OF COMMISSIONERS ON GRIEVANCES AND DISCIPLINE OF THE OHIO SUPREME COURT, *et al*.,

Defendants

CASE NO. 1:13cv435

Judge Michael R. Barrett

**OPINION AND ORDER**

This matter is before the Court upon Plaintiffs Platt for Judge Campaign Committee and Mark Miller's Motions to Compel Discovery. (Docs. 33, 34). Also before the Court is Defendants Richard A. Dove, Scott J. Drexel and Maureen O'Connor's Motion for Protective Order (Doc. 46. These Motions have been fully briefed. (Docs. 38, 41, 47, 48).

Plaintiffs bring constitutional challenges to six provisions of the Ohio Code of Judicial Conduct, but only to the extent that those provisions apply to non-incumbent judicial candidates or their campaign committees. Plaintiffs sought an injunction enjoining Defendants from enforcing the provisions against them. This Court denied injunctive relief on the basis that Plaintiff had not shown a likelihood of success on the merits of their claims. This Court applied the strict scrutiny analysis set forth and applied to similar provisions in *Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010) (reviewing facial challenge to three clauses in the Kentucky Supreme Court's Code of

Judicial Conduct). One of the provisions of the Ohio Code of Judicial Conduct did not have a corresponding provision discussed in *Carey*. This provision, Rule 4.4(E), limits when a campaign committee can begin soliciting and receiving contributions. This Court applied the analysis from *Buckley v. Valeo*, 424 U.S. 1 (1976), where the Supreme Court held that contribution limitations are permissible where the limits are "closely drawn" to match a "sufficiently important interest." *Id*. at 25. This Court explained:

> Certainly, Ohio has a compelling interest in upholding the appearance and reality of impartiality of judicial candidates as well as sitting judges. The idea that impartiality becomes important only once elected is non-sensical. As Defendants argue: limiting judicial candidates' ability to solicit funds to a certain period of time reduces any erosion in public perception of the independence of the judiciary that a never-ending solicitation of money could cause.
>
> As Defendants point out, Platt would be permitted to contribute and expend his own personal funds. In addition, Platt is able to engage in campaign activities other than soliciting funds, such as attending political functions, marching in parades and making speeches about their candidacy. Therefore, the Court concludes that Rule 4.4(E) does not violate Plaintiffs' First Amendment rights.

(Order, Doc. 23, PAGEID #350).

Plaintiffs appealed this Court's Order denying injunctive relief. (Doc. 24). The Sixth Circuit affirmed this Court's decision. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447 (6th Cir. 2014). After addressing the issues of standing, ripeness, and mootness, the Sixth Circuit explained:

> Our opinion does not guarantee the State a win on the merits. Far from it: We, like the Supreme Court, do not "intimate [a] view" on the merits one way or the other. *Doran*, 422 U.S. at 934, 95 S.Ct. 2561. The ultimate issue—whether Ohio's narrower Code provisions satisfy the First Amendment principles discussed in *Carey*—remains an open question, one in which the Supreme Court may soon provide guidance. *See Florida Bar v. Williams–Yulee*, 138 So.3d 379 (Fla. 2014), *cert. granted*, ––– U.S.

> ——, 135 S.Ct. 44, 189 L.Ed.2d 896, 2014 WL 2763710 (Oct. 2, 2014) (granting certiorari on "[w]hether a rule of judicial conduct that prohibits candidates for judicial office from personally soliciting campaign funds violates the First Amendment"). But now is not the time for us to answer that question. Here, we conclude only that, upon de novo review, Platt has not established a "strong likelihood of success on the merits," *Schimmel*, 751 F.3d at 430, and that the district court did not abuse its discretion in balancing the four preliminary-injunction factors.

*Id*. at 455.

The Sixth Circuit's decision was cited by this Court in another case bringing a similar challenge to two of the same provisions of the Ohio Code of Judicial Conduct. *O'Toole v. O'Connor*, No. 2:15-CV-1446, 2015 WL 3505524, at *3 (S.D. Ohio June 3, 2015) (Graham, J.). However, in *O'Toole*, this Court had the benefit of having the United States Supreme Court's decision in *Willliams–Yulee v. Florida Bar*, 135 S.Ct. 1656 (2015). Using the analysis provided in that decision, this Court in *O'Toole* denied injunctive relief, concluding that the plaintiffs had not shown a likelihood of success on the merits of the First Amendment or Equal Protection challenges. 2015 WL 3505524, at *9. Plaintiffs have appealed that decision and the appeal remains pending.

In their Motion for Protective Order, Defendants argue that the Supreme Court's decision in *Williams-Yulee* renders the discovery Plaintiffs seek both impermissible and irrelevant. Defendants seek a protective order pursuant to Federal Rule of Civil Procedure 26(c). Plaintiffs respond that to rule on the constitutionality of Ohio Code of Judicial Conduct rules without the requested discovery would amount to giving an "advisory opinion" based on hypothetical facts.

While the parties discuss the impact of *Williams-Yulee* on Plaintiffs' claims, the Court is not addressing the merits of Plaintiffs' claims at this time. The question is,

given the analysis provided in *Williams-Yulee*, whether Plaintiffs should be permitted to conduct additional discovery.

In *Williams–Yulee*, the Supreme Court upheld the State of Florida's ban on personal solicitation of campaign funds by judicial candidates. 135 S.Ct. at 1673. The Court explained that the First Amendment permits the regulation of judicial candidates' speech, but the restriction must be narrowly tailored to serve a compelling interest. *Id*. at 1665. The Court found that states have a compelling interest in preserving public confidence in judicial integrity:

> We have recognized the "vital state interest" in safeguarding "public confidence in the fairness and integrity of the nation's elected judges." *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 889, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009) (internal quotation marks omitted). The importance of public confidence in the integrity of judges stems from the place of the judiciary in the government. Unlike the executive or the legislature, the judiciary "has no influence over either the sword or the purse; ... neither force nor will but merely judgment." The Federalist No. 78, p. 465 (C. Rossiter ed. 1961) (A. Hamilton) (capitalization altered). The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions. As Justice Frankfurter once put it for the Court, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954). It follows that public perception of judicial integrity is "a state interest of the highest order." *Caperton*, 556 U.S., at 889, 129 S.Ct. 2252 (quoting White, 536 U.S., at 793, 122 S.Ct. 2528 (KENNEDY, J., concurring)).

*Id*. at 1667. Writing for the majority, Chief Justice Roberts explained that "[t]he concept of public confidence in judicial integrity does not easily reduce to precise definition, nor does it lend itself to proof by documentary record." *Id*.[1]

[1]In his dissenting opinion, Justice Scalia criticized this approach: "Neither the Court nor the State identifies the slightest evidence that banning requests for contributions will substantially improve public trust in judges. Nor does common sense make this happy forecast obvious." 135 S. Ct. at 1678 (Scalia, J., dissenting).

Plaintiffs seek to cross-examine Defendants on the justification for the restrictions in the six provisions at issue. Similarly, Plaintiffs served interrogatories which ask Defendants to identify "all states or commonwealths of which Defendants are aware or believe that a judicial candidate is permitted by the applicable judicial rules to engage in the conduct prohibited or regulated by the judicial canons at issue herein." (Doc. 33, PAGEID # 380). Plaintiffs served other interrogatories which are presumably designed to discover the compelling interest advanced by the six provisions of the Ohio Code of Judicial Conduct.[2] Plaintiffs have also requested the following documents:

> non-privileged communications Defendants have had with another Defendant or any person or organization (other than their attorneys) concerning matters related to this lawsuit or the judicial rules at issue;
>
> documents relating to any assessment, analysis or consideration of amending the judicial rules at issue, as well as such documents addressing prior court decisions involving challenges to judicial rules;
>
> documents relating to the history of the rules and regulations imposed upon the political and/or campaign activities of judges or judicial candidates in the State of Ohio since the time that judges were first elected in the State of Ohio.

---

[2]These interrogatories seek:

> inquiries relating to a 2013 amendment to the judicial rules which removed a prior prohibition therein relating to certain political activities by judicial candidates and their campaign committees and the compelling interests which supposedly justified that prior prohibition;
>
> the identification of the specific compelling governmental interests which Defendants maintained are being served and advanced by the judicial rules at issue herein, as well as the factual and legal basis upon which Defendants rely for such interests as constituting compelling governmental interests;
>
> the history of the rules and regulations imposed upon the political and/or campaign activities of judges or judicial candidates in the State of Ohio since the time that judges were first elected in the State of Ohio.

(Doc. 34, PAGEID # 395).

(Doc. 34, PAGEID # 394-95).

Based on this Court's reading of *Williams–Yulee*, such evidence is unnecessary to support the State of Ohio's compelling interest in judicial integrity. Moreover, "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000).

Plaintiffs also seek to discover the scope of the six provisions at issue. Specifically, Plaintiffs seek evidence of situations that are subject to the provisions, but do not violate the provisions. Plaintiffs argue: "it is appropriate to inquire into and develop evidence relating to situations – actual and theoretical – that might, on first blush, be subject to the judicial canons but apparently does not rise to the level of violating any of the various judicial canons (as nothing because of such complaints or activities)." (Doc. 47, PAGEID # 1208). Similarly, Plaintiffs seek responses to interrogatories related to "the application *vel non* of the judicial canons at issue herein to a voluntarily retired judge in the State of Ohio." (Doc. 33, PAGEID # 380). Plaintiffs have also requested "documents relating to specific grievances alleging violations of judicial rules by sitting members of the judiciary that were filed with the Ohio Supreme Court/Disciplinary Counsel and were reported upon in the news media;" and "documents relating to specific grievances alleging violations of judicial rules at issue herein which were filed with the Ohio Supreme Court/Disciplinary Counsel." (Doc. 34, PAGEID # 394-95).

This type of evidence would presumably go towards proving that the six provisions are underinclusive. As the Supreme Court in *Williams–Yulee* explained,

underinclusiveness can "reveal that a law does not actually advance a compelling interest." 135 S.Ct. at 1668. However, in *Williams–Yulee* the Supreme Court found that:

> Canon 7C(1) raises no fatal underinclusivity concerns. The solicitation ban aims squarely at the conduct most likely to undermine public confidence in the integrity of the judiciary: personal requests for money by judges and judicial candidates. The Canon applies evenhandedly to all judges and judicial candidates, regardless of their viewpoint or chosen means of solicitation. And unlike some laws that we have found impermissibly underinclusive, Canon 7C(1) is not riddled with exceptions. *See City of Ladue v. Gilleo*, 512 U.S. 43, 52–53, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). Indeed, the Canon contains zero exceptions to its ban on personal solicitation.

*Id*. at 1668-69. The Court then addressed several arguments advanced by the plaintiff and the dissent that Canon 7C(1) was underinclusive, and therefore did not advance the public's confidence in judicial integrity: Canon 7C(1) allows solicitation by a candidate's campaign committee, but does not allow for personal solicitation; in Florida, judicial candidates are allowed to write thank you notes to campaign donors; and Florida does not ban judicial candidates from asking individuals for personal gifts or loans. The Court rejected these arguments:

> Taken to its logical conclusion, the position advanced by Yulee and the principal dissent is that Florida may ban the solicitation of funds by judicial candidates only if the State bans all solicitation of funds in judicial elections. The First Amendment does not put a State to that all-or-nothing choice. We will not punish Florida for leaving open more, rather than fewer, avenues of expression, especially when there is no indication that the selective restriction of speech reflects a pretextual motive.

*Id*. at 1656.

While it remains to be seen how this analysis will apply to the six provisions at issue in this case, it is clear that the Supreme Court reached its conclusion without

regard for evidentiary support. This was one of the main criticisms set forth by the dissent in *Williams–Yulee*:

> In order to uphold Canon 7C(1) under strict scrutiny, Florida must do more than point to a vital public objective brooding overhead. The State must also meet a difficult burden of demonstrating that the speech restriction substantially advances the claimed objective. The State "bears the risk of uncertainty," so "ambiguous proof will not suffice." *Entertainment Merchants*, 564 U.S., at ——, 131 S.Ct., at 2739. In an arresting illustration, this Court held that a law punishing lies about winning military decorations like the Congressional Medal of Honor failed exacting scrutiny, because the Government could not satisfy its "heavy burden" of proving that "the public's general perception of military awards is diluted by false claims." *United States v. Alvarez*, 567 U.S. ——, ——, 132 S.Ct. 2537, 2549, 183 L.Ed.2d 574 (2012) (plurality opinion).
>
> Now that we have a case about the public's perception of judicial honor rather than its perception of military honors, the Justices of this Court change the rules. The Court announces, on the basis of its "intuiti[on]," that allowing personal solicitations will make litigants worry that " 'judges' decisions may be motivated by the desire to repay campaign contributions.' " *Ante*, at 1667.

*Id*. at 1678 (Scalia, J., dissenting).

Plaintiffs attempt to distinguish *Williams-Yulee* by pointing out that the plaintiff in that case only brought a direct First Amendment challenge and did not bring challenges based upon due process, vagueness and equal protection. However, Plaintiffs do not explain how their evidentiary burden would be any different for these claims. As this Court has already recognized, Plaintiffs' Equal Protection claim is based on free speech as a fundamental right. *O'Toole*, 2015 WL 3505524, at *9. As such, "this argument simply returns the plaintiffs to the essence of their First Amendment claim: that Rule 4.4(E) is not narrowly tailored to serve a compelling state interest, that the rationale for imposing a time restraint on fundraising solicitations by judicial campaign committees does not pass strict scrutiny review." *Id*.

Based on the foregoing, Plaintiffs Platt for Judge Campaign Committee and Mark Miller's Motions to Compel Discovery (Docs. 33, 34) are **DENIED**; and Defendants Richard A. Dove, Scott J. Drexel and Maureen O'Connor's Motion for Protective Order (Doc. 46) is **GRANTED**.

**IT IS SO ORDERED**.

                                                                                    */s/ Michael R. Barrett*
                                                                           Michael R. Barrett, Judge
                                                                           United States District Court